**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 26-MJ-93 (MAU) |
| v. | : | |
| | : | |
| MOHAMMED DEEN | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm) as the defendant Mohammed Deen is charged with violating 18 U.S.C. § 922(g)(1) (unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by a term of imprisonment exceeding one year). On May 26, 2026, Metropolitan Police Department ("MPD") officers conducted a traffic stop on the defendant for not having a license plate affixed to the front of his vehicle. Inside of the front middle console of the defendant's vehicle was a 9mm pistol, which was loaded and ready to be fired with 1 round in the firearm's chamber. The defendant illegally possessed this pistol despite being prohibited from doing so because he was previously convicted for a gun and drug-related offense. Considering the factors set forth under 18 U.S.C. § 3142(g), there are no conditions or combinations of conditions that will reasonably assure the safety of the community should the defendant be released.

**FACTUAL BACKGROUND**

On the afternoon of May 26, 2026, MPD officers along with agents from the Diplomatic Security Service were patrolling in Police Service Area 105 in Washington, D.C. MPD Officers Alexander Squitieri, Timothy Ahl and Mohd Hossain as well as Lieutenant Jeremy Kniseley (the "Officers") were in uniform and driving in Cruiser 171, a marked MPD vehicle. At approximately

1

6:10 p.m., Officers Squitieri and Ahl saw a black Toyota sedan with no front tag affixed to the vehicle's front bumper driving westbound on the 100 block of M Street, SW. The Officers made a U-turn, drove behind the vehicle, and saw that it had Maryland tag 2GX3114 affixed to its rear bumper. Officer Mohd ran the vehicle's tag through the Washington Area Law Enforcement System and National Crime Information Center databases and learned that the vehicle was registered to Mohammed Deen.

Officers conducted a traffic stop and pulled the vehicle over in front of 35 Parker Road, SW, for driving without having a front tag securely fastened to the front of the vehicle, in violation of D.C. Municipal Regulations § 18-422. Officer Squitieri, who was followed by Officer Ahl, approached the vehicle's front driver's side door and encountered the defendant Mohammed Deen, who was the vehicle's sole occupant. At the same time, Officer Hossain, who was followed by Lieutenant Kniseley, approached the vehicle's front passenger side door. Officer Hossain had an unobstructed view of the vehicle's front middle console through the vehicle's windows, which had zero to minimal tint.  Officer Squitieri informed the defendant that the reason he was pulled over was because he did not have a front tag on display. The defendant stated that the tag was on his dashboard, but Officer Squitieri explained that the tag had to be affixed to the front of the vehicle. Officer Squitieri then asked for the defendant's driver's license.

As the defendant was retrieving his license from the vehicle's front middle console, Officer Hossain saw the slide of a firearm in the console in plain view. Officer Hossain then signaled that the defendant had a firearm to the other officers by stating the codeword "1-8." Officers Squitieri and Ahl immediately detained the defendant.

Officer Hossain then recovered a black 9mm Glock pistol from the middle console. The firearm was loaded with 4 rounds of ammunition in a 6-round capacity magazine, and 1 round in

2

the firearm's chamber. The firearm appeared to be fully functional, designed to expel a projectile by means of an explosion, had a barrel length of less than 12 inches, and was capable of being fired with a single hand.



*Firearm in Vehicle's Front Middle Console*



*Firearm, Magazine, and Ammunition After Recovery*

3

The defendant stated that he was not licensed to carry a firearm in Washington, D.C. Officers also conducted a check of the D.C. gun registry and confirmed that the defendant did not possess a concealed carry license in D.C. and that the firearm was not registered.

Officers then arrested the defendant for various firearm violations. The defendant was also issued a Notice of Infraction for his lack of a proper front license plate. Thereafter, the defendant's vehicle was searched. Inside of the vehicle were 3 plastic bags and 2 mylar bags containing approximately 1.14 pounds of suspected marijuana, 1 jar of tetrahydrocannabinol wax, a scale, and 30 empty mylar bags, along with $432 in U.S. currency. A portion of the green leafy substance had a positive color reaction for presence of marijuana. Photographs of the marijuana in plastic bags and mylar bags are included below.

 




## LEGAL AUTHORITY

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). When determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. *See* 18 U.S.C. § 3142(g).

In making the pretrial detention determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the

5

government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

## ARGUMENT

The United States seeks pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(E). The facts and circumstances in this case demonstrate that there are no conditions or combination of conditions that would assure the safety of the community or the defendant's return to court should he be released. *See* 18 U.S.C. § 3142(e)(1). All four Section 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

### A.      The Nature and Circumstances of this Offense Merit Detention

When officers first observed the defendant, he was driving in and around a busy mixed-use residential and commercial area. The stop occurred at the Wharf, a heavily populated and popular area for tourists and locals alike, known for its thriving restaurant and bar scene. Further, the defendant's weapon was loaded, ready to be fired, and easily accessible to be used at any moment—it was located within hands reach in the front middle console of the defendant's vehicle. The danger posed by guns such as the one recovered here, in such a busy and highly populated area, cannot be overstated. As a threshold matter, the Court has repeatedly held that possession of

6

a loaded firearm poses a risk of danger to the community. *See, e.g., United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community."); *United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). More specifically to the defendant's case, the danger to the community is particularly heightened given the haphazard manner in which the firearm was placed in the defendant's vehicle, and that it had a round of ammunition in its chamber. *See, e.g., United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (Faruqui, M.J.) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020). As such, the nature and circumstances of this case weigh in favor of detention.

Additionally, the Court may and should consider uncharged conduct, namely, that the defendant possessed the firearm in connection with a drug trafficking crime in violation of 18 U.S.C. 924(c). *See, e.g., United States v. CruzHernandez*, 422 F. Supp. 3d 157, 161 (D.D.C. 2019). Within the defendant's vehicle were the makings of a mobile marijuana dispensary: 1.14 pounds of suspected marijuana, 1 jar of tetrahydrocannabinol wax, a scale, and 30 empty mylar bags. The quantity of marijuana, coupled with the scale, and empty mylar bags, is strong evidence that not only did the defendant possession marijuana with the intent to distribute it. Moreover, the fact that the defendant had $432 in currency in his vehicle provides further evidence that he was in possession of the marijuana, scales, and bags with the intent to illegally distribute the marijuana. Numerous courts, including the Supreme Court, have recognized that "drugs and guns are a

7

dangerous combination." *United States v. Brown*, 538 F. Supp. 3d 154, 169 (D.D.C. 2021) (quoting *Smith v. United States*, 508 U.S. 223, 240 (1993)). Here, the defendant compounded that danger by arming himself with deadly force and distribution levels of marijuana as he traveled through a highly populated area, in the early evening.

### B.    The Weight of the Evidence Against the Defendant is Strong

The firearm was recovered from the vehicle's front middle console. The vehicle was registered to the defendant, and the defendant was the sole occupant of the vehicle when he was stopped. Further, the recovery of that firearm was recorded by the responding officers' body-worn camera. The officers' body worn camera showed that the firearm was easily accessible to the defendant; indeed, it was in the very compartment where the defendant reached into when officers asked the defendant for his license, registration and proof of insurance. This is a strong constructive possession case. As this Court has noted, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *1 (D.D.C. Feb. 6, 2023). Because this is true here, the strength of the evidence against the defendant also favors detention.

### C.    The Defendant's History and Characteristics Merit Detention

From 2018 to the present, the defendant has had consistent and continuous contacts with the criminal justice system, including a conviction in Prince George's County, Maryland for a gun and drug related offense (CT170721X) and five subsequent arrests. The circumstances in CT170721X are disconcertingly similar to the instant matter. In that case, on February 3, 2017, officers observed the defendant parked in an area known for drug trafficking. After lawfully

stepping the defendant out of his vehicle, officers recovered a loaded 9 mm pistol between the driver's seat and the front driver's door, a vial containing an ounce of liquid phencyclidine from inside the front driver's door, 45 grams of marijuana and a digital scale from inside of the vehicle's front middle console, and $1,159 in various small denominations from the defendant's person. On January 12, 2018, the defendant was convicted of transporting a handgun and possession with intent to distribute a controlled substance and sentenced to an aggregate term of five years of incarceration, with four of those years suspended.

Despite the defendant's conviction, he was subsequently arrested five more times. Of those arrests, 2 were for drug and gun-related offenses (in 2022 and 2023). The remaining two arrests also involved drugs (in 2024 and 2025). The defendant has now been arrested again, and has been found with a firearm, over a pound of marijuana, a scale and packaging materials. Ultimately, the defendant's behavior demonstrates that he remains either unwilling or unable to comply with the law, and that nothing short of detention will stop him from illegally possessing a gun.

**D.      The Defendant Presents a Danger to Our Community**

The defendant's possession of a firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).  This requires the Court to make a "forward looking determination" about the defendant's risk of danger to the community, keeping in mind

9

that detention may be justified even if the Court does not explicitly find that the defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Here, the defendant, without a doubt, poses an articulable threat to the community as evidenced by the facts of this case—that the defendant possessed, within hands reach, a loaded firearm that was ready to be fired as well as drugs and paraphernalia—and that he did so despite having been previously convicted of a gun and drug-related offense. This should not only give this Court extreme pause, but should confirm that the Court can have no confidence that the defendant will abide by court orders and refrain from illegally possessing a gun or engaging in other criminal activity, if released.

## CONCLUSION

WHEREFORE, the United States respectfully submits that the Court hold the defendant without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By:    /s/ *Ursula N. Simmons*
URSULA N. SIMMONS
Special Assistant United States Attorney
NY No. 5816061
601 D Street, NW
Washington, D.C. 20530
202-809-0787
Ursula.Simmons@usdoj.gov

10